IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DALLAS McINTOSH, <br> # B-85114, <br><br> Plaintiff, <br><br> vs. <br><br> BRENDAN F. KELLY, <br> NICHOLAS GAILIUS, <br> JEFF STRATMAN, <br> JEFF BLAIR, <br> TIMOTHY MUELLER, <br> RYAN WEISENBORN, <br> ELBERT JENNINGS, <br> JAMES G. PIPER, <br> UNKNOWN PARTY and <br> CITY OF FAIRVIEW HEIGHTS, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 16-cv-01018-SMY <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is now before the Court for preliminary review of the First Amended Complaint (Docs. 7 and 7-1) filed by Plaintiff Dallas McIntosh, an inmate who is currently incarcerated at Menard Correctional Center ("Menard"). Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983 for an unlawful traffic stop, search and seizure that occurred in Fairview Heights, Illinois, on September 25, 2012. (Doc. 7, pp. 1-31; Doc. 7-1, pp. 1-38). He names numerous local and state officials in their individual and official capacities, for violating his rights under federal and state law in connection with the traffic stop. *Id*. Plaintiff seeks declaratory judgment and monetary damages. (Doc. 7-1, pp. 29-30).

This case is now before the Court for a preliminary review of the First Amended Complaint pursuant to 28 U.S.C. § 1915A, which provides:

1

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### First Amended Complaint

Plaintiff alleges that he was subject to an unlawful traffic stop in Fairview Heights, Illinois around 1:40 a.m. on September 25, 2012. (Doc. 7, p. 3). He was on a date at the time. *Id*. As he pulled his 2010 Chevrolet Camaro into the parking lot of the Fairfield Inn located near St. Clair Avenue and Fairview Drive, Plaintiff observed a local police officer, Officer Stratman, sitting in his patrol car in the same lot. *Id*. Plaintiff exited his vehicle and waved to the officer as he walked into the hotel to rent a room. (Doc. 7, p. 4). Officer Stratman acknowledged Plaintiff by nodding back at him. *Id*.

Plaintiff entered the Fairfield Inn but returned to his car after deciding not to rent a room there. (Doc. 7, p. 4). He drove his vehicle through an adjacent lot and headed west on Ludwig Drive. *Id*. Officer Stratman began following Plaintiff. *Id*. At times, the officer trailed so closely behind Plaintiff's vehicle that he almost ran into the Camaro. *Id*.

After turning west on Highway 50, Plaintiff changed lanes and Officer Stratman pulled him over. (Doc. 7, p. 4). Plaintiff recalls the officer collecting his information as well as his passenger's and returning to the patrol car. *Id*. While Officer Stratman sat in his patrol car, presumably preparing a ticket, Officer Blair arrived in a K-9 unit and performed a "free air sniff" on Plaintiff's vehicle. (Doc. 7, p. 5). Plaintiff does not recall anything that happened afterwards. *Id*.

Plaintiff later learned that he was "shot multiple times in vital areas, eventually lapsing into a coma." (Doc. 7, p. 5). He was hospitalized in critical condition. *Id*. Although he recovered, Plaintiff was unable to recall most of the events that transpired during the traffic stop, including basic information like the location of the stop, the reason given for the stop or the individual who was present in his vehicle at the time. *Id*.

Plaintiff was indicted by Brendan Kelly (State's Attorney) and James Piper (Assistant State's Attorney). (Doc. 7, p. 5). Detective Mueller testified before the grand jury on October 19, 2012, saying, "Officer Stratman stopped the vehicle for failing to signal." (Doc. 7, p. 6). At the time of making this statement, Detective Mueller allegedly knew that it was false. (Doc. 7, pp. 25-27). Throughout the criminal proceedings, Attorneys Kelly and Piper likewise maintained that Officer Stratman lawfully stopped Plaintiff for "failure to signal when changing lanes." (Doc. 7, pp. 5-6). They also knew this representation was false and showed the grand

jury edited video footage of the traffic stop that excluded Officer Stratman's stated reason for stopping Plaintiff. (Doc. 7, pp. 28-29).

On September 11, 2014, Attorney Kelly told Plaintiff, his defense counsel (Michael Mettes) and the Court (Honorable Robert Haida) that Plaintiff's "failure to signal when changing lanes" established probable cause for the stop. (Doc. 7, p. 6). On at least 5 separate occasions, Attorney Mettes made the same statement to Plaintiff and his family and he stipulated to this fact at Plaintiff's plea hearing. (Doc. 7, p. 7). On the basis of these representations, Plaintiff entered a guilty plea. *Id*.

According to the Illinois Department of Corrections' website (www.illinois.gov/idoc), Plaintiff was ultimately sentenced to 40 years of imprisonment for each of 2 counts of aggravated battery or discharge of a firearm and 7 years of incarceration for 1 count of manufacturing or delivering cannabis (>500 grams). *See Bova v. U.S. Bank, N.A.,* 446 F. Supp. 2d 926, 930 n. 2 (S.D. Ill. 2006) (a court may judicially notice public records available on government websites) (collecting cases).

At his sentencing hearing on January 29, 2015, Plaintiff viewed video footage of the traffic stop for the first time. (Doc. 7, p. 7). The video was taken from Officer Stratman's patrol car. (Doc. 7, pp. 7-8). It depicted Plaintiff changing lanes lawfully and using a signal the entire time he did so. (Doc. 7, p. 8). The video also reveals Officer Stratman's stated reason for the traffic stop. *Id*. The officer told Plaintiff that, after signaling, he failed to travel an additional 100 feet before changing lanes. *Id*. In addition, the video includes Officer Stratman's conversation with Officer Blair during which Officer Stratman indicated that he may have seen the same Camaro earlier that day, that the occupant had an extensive criminal record, and that any illegal items were probably "hidden by now." (Doc. 7, p. 16). Plaintiff maintains that the

video footage directly contradicts the reasons given for the stop by Attorney Kelly, Attorney Piper, Detective Mueller and Attorney Mettes. (Doc. 7, pp. 7-8).

On the basis of the video footage, Plaintiff filed a Motion to Withdraw Guilty Plea. (Doc. 7, p. 9). He argued that the traffic stop was illegal because Illinois law only requires a driver to signal before changing lanes. (Doc. 7, pp. 9-11). According to Plaintiff, state law imposes no minimum distance requirement for signaling before a lane change in the area he was stopped. *Id*. Plaintiff also argued that he relied on misrepresentations made by his defense attorney, including a statement that a written warning was never "completed" or issued, when agreeing to enter a plea of guilty. (Doc. 7, p. 12). Plaintiff inquired into the existence of a citation at the hearing on his Motion to Withdraw Guilty Plea on November 9, 2015. (Doc. 7, p. 13). Only then did Attorney Piper admit to the existence of a written warning.[1] *Id*. He was ordered to turn over a copy of it and eventually did so on January 11, 2016. (Doc. 7, p. 14). Plaintiff has since informed the Court that his Motion to Withdraw Guilty Plea was denied on January 17, 2017. (Doc. 8).

Plaintiff now claims that the defendants conspired to violate his constitutional rights in connection with the traffic stop that took place in Fairview Heights on September 25, 2012. (Doc. 7, pp. 30-31). According to the First Amended Complaint, Officers Stratman and Blair intentionally violated Plaintiff's Fourth and Fourteenth Amendment rights by conducting an illegal traffic stop, an unlawful search and an illegal seizure because of his race. (Doc. 7, pp. 11-18). Plaintiff maintains that he was stopped for "driving while Black." (Doc. 7, p. 15).

According to Plaintiff, Officer Stratman, Detective Mueller, Officer Weisenborn, Officer Doe and Investigator Jennings then worked together to "cover-up the truth" by issuing false and misleading police reports and affidavits following the stop. (Doc. 7, p. 30; Doc. 7-1, p. 23).

---

[1] At the time, Plaintiff's defense attorney was unaware of its existence. (Doc. 7, pp. 13-14).

Their reports were "intentionally vague" and "deliberately deceptive," aimed only at establishing probable cause and persuading Plaintiff to plead guilty to the criminal charges brought against him. (Doc. 7-1, pp. 1-2).

Attorneys Kelly and Piper allegedly organized this conspiracy to cover up the constitutional violations by withholding the video footage and written warning from Plaintiff and his defense attorney until securing his guilty plea. (Doc. 7-1, pp. 14-16; 7-1, p. 22). Attorney Kelly also worked with the other defendants to carry out this plan by securing false or misleading reports, withholding the ticket, and editing the traffic stop video, among other things. (Doc. 7-1, p. 22). Plaintiff alleges that the defendants engaged in a conspiracy to cover up their unlawful acts, which he refers to as the "Blue Code of Silence." (Doc. 7-1, p. 24).

According to Plaintiff, this incident was part of a broader unwritten policy of the Fairview Heights Police Department to target minorities for racial profiling, selective law enforcement, illegal searches and unlawful seizures. (Doc. 7, pp. 18-19). He alleges that the Fairview Heights Police Department routinely uses these predatory practices on minorities. (Doc. 7, p. 19-20). Plaintiff contends that the practices are so "deeply imbedded" that they go unnoticed by non-minorities. (Doc. 7, p. 21).

Police Chief Nicholas Gailius and the officers who serve under him are aware of these practices but choose to turn a "blind eye" to them. (Doc. 7, p. 20). As a result, Chief Gailius is also responsible for the violation of Plaintiff's constitutional rights. (Doc. 7, p. 23). Plaintiff claims that Investigator Ebert Jennings is also responsible. He investigated the case, but Plaintiff describes the investigation as a "sham" meant only to "conceal Stratman and Blair[']s wrongdoing." (Doc. 7-1, pp. 7-8). Like Chief Gailius, Investigator Jennings chose to "look the other way," in order to protect a "brother in blue." (Doc. 7-1, p. 9).

## Merits Review Under 28 U.S.C. § 1915A

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court has organized the claims in Plaintiff's *pro se* First Amended Complaint into the following enumerated counts:

**Count 1 -** Fourth Amendment claim against Stratman and Blair for the unlawful stop, search and seizure of Plaintiff on September 25, 2012.

**Count 2 -** Fourteenth Amendment equal protection claim against Stratman and Blair for stopping Plaintiff and searching him and/or his vehicle without probable cause based on racial animus on September 25, 2012.

**Count 3 -** Fourteenth Amendment equal protection claim against the City of Fairview Heights, Illinois, including Gailius, for maintaining a policy, custom or practice of stopping individuals without probable cause based on racial animus.

**Count 4 -** Conspiracy claims against the defendants for working together to deprive Plaintiff of his constitutional rights and covering up their misconduct in connection with the traffic stop, search and seizure that occurred on September 25, 2012.

**Count 5 -** Fourteenth Amendment due process and state law malicious prosecution claims against defendants arising from the stop, search, and seizure that occurred in Fairview Heights, Illinois, on September 25, 2012, and the subsequent attempts to cover up the misconduct that occurred in connection with it.

**Count 6 -** Illinois state law claim for intentional infliction of emotional distress against the defendants resulting from the stop, search and seizure of Plaintiff in Fairview Heights, Illinois, on September 25, 2012.

The parties and the Court will continue using these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

### **Claims Subject to Further Review**

### **Counts 2 and 3**

Racial profiling claims may be brought in a § 1983 action under the Fourteenth Amendment Equal Protection Clause. *Chavez v. Illinois State Police*, 251 F.3d 612, 620 (7th Cir. 2001). Such claims require "proof that the defendant's actions had a discriminatory effect and were motivated by discriminatory purpose." *Id.* at 635-36. Discriminatory effect requires plaintiffs to show that "they are members of a protected class, that they are otherwise similarly situated to members of the unprotected class, and that plaintiffs were treated differently from members of the unprotected class." *Id.* (citing *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000)). To establish discriminatory intent, a plaintiff must show that "decisionmakers in [his] case acted with discriminatory purpose." *Id.* at 645. This implies that "the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of' . . . its adverse effects upon an identifiable group." *Id.* (citing *McCleskey v. Kemp*, 481 U.S. 279, 298 (1987)).

Plaintiff names Stratman and Blair in Count 2 and the City of Fairview Heights and Gailius in connection with a *Monell* claim in Count 3. Plaintiff alleges that he was targeted for a traffic stop because of racial animus against Blacks that was reflected in a deeply imbedded policy, custom or practice of racial profiling in the City of Fairview Heights. He devoted a significant portion of his First Amended Complaint comparing the treatment of Black and White drivers in the City. Plaintiff maintains that he was pulled over simply because of his race. Given these allegations, the Court finds that further review of these claims is necessary. Accordingly, Count 2 shall proceed against Stratman and Blair. Count 3 shall proceed against the City of Fairview Heights and Gailius. These claims shall be dismissed with prejudice against those defendants who are not named in connection with each claim.

### Count 4

The Court will also allow the common law conspiracy claim in Count 4 to proceed against Stratman, Blair, Gailius, and the City of Fairview Heights, but no other defendants. Civil conspiracy claims are cognizable under § 1983. *See Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002) (recognizing conspiracy claim under section 1983). "[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date . . . ." *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002). *See also Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003); *Tierney v. Vahle*, 304 F.3d 734, 740 (7th Cir. 2002). The First Amended Complaint meets these basic pleading requirements with respect to the conspiracy claims against Stratman, Blair, Gailius and the City of Fairview Heights. Count 4 is therefore subject to further review against these defendants.

However, this claim is subject to dismissal against the remaining defendants. Conspiracy is not an independent basis of liability in § 1983 actions. *See Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008); *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). "There is no constitutional violation in conspiring to cover-up an action which does not itself violate the Constitution." *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996). Because all other claims are subject to dismissal, the conspiracy claims arising from them are as well.

In summary, Count 4 is subject to further review against Stratman, Blair, Gailius and the City of Fairview Heights. This claim shall be dismissed without prejudice against all other defendants.

### Claims Subject to Dismissal

### Count 1

Plaintiff's claim against the defendants in Count 1 is barred by *Heck v. Humphrey*, 512

U.S. 477, 486-87 (1994).  Under *Heck*, a plaintiff cannot pursue a § 1983 claim for money damages where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction," unless the conviction has already been invalidated.  *Id*.  Plaintiff's convictions still stand, even after he filed a Motion to Withdraw Guilty Plea.  (Doc. 8).  Thus, Plaintiff is precluded from pursuing his Fourth Amendment claims against Stratman and Blair, if a judgment in his favor would undermine the convictions.

*Heck* does not bar all Fourth Amendment claims challenging a plaintiff's arrest.  A defendant who pleads guilty to a charge is often not precluded by *Heck* from subsequently raising a Fourth Amendment claim because the conviction depended on his plea and not on evidence allegedly obtained by unlawful conduct.  *See Easterling v. Moeller*, 334 F. App'x 22, 24 (7th Cir. 2009).  However, the Seventh Circuit Court of Appeals has recognized that a civil rights plaintiff may plead himself "into a *Heck* bar by insisting on facts inconsistent with his guilt." *Id*.

Plaintiff has essentially done just that in his First Amended Complaint.  He has interwoven a challenge to his guilty plea with a challenge to the lawfulness of his stop, search and seizure.  Plaintiff claims that his guilty plea was based on misrepresentations made by the defendants about the reason for his traffic stop, search and seizure.  Only after pleading guilty to the charges did Plaintiff discover the alleged lack of probable cause for the traffic stop, search and seizure that occurred on September 25, 2012.  Plaintiff now claims that he would not have agreed to enter a guilty plea had he known this information beforehand.  However, the illegal stop was the first step in a broader conspiracy to deprive Plaintiff of his constitutional rights, by securing a guilty plea from him based on misrepresentations made by state officials about the stop.  *See Jackson v. Holton*, 438 F. App'x 496, *2 (7th Cir. 2011) (dismissing false arrest and

10

malicious prosecution claims as *Heck*-barred) (citations omitted).

Because Plaintiff's convictions still stand, the Fourth Amendment claim in Count 1 shall be dismissed without prejudice as *Heck*-barred. This decision does not preclude Plaintiff from re-pleading this claim. It also does not prevent Plaintiff from pursuing a direct appeal of his criminal convictions in state court, a collateral attack on his convictions in state court, habeas relief in federal court or a § 1983 claim for money damages if his convictions are ultimately overturned.

**Count 5**

The Fourteenth Amendment due process claim and malicious prosecution[2] claim arise from the same allegations of misconduct on the part of defendants. Plaintiff alleges that the defendants attempted to cover up the fact that Stratman and Blair lacked probable cause for the stop, search and seizure by issuing police and investigatory reports containing false information. (Doc. 7-1, pp. 22-23). According to Plaintiff, the reports were simply aimed at securing Plaintiff's guilty plea. *Id*. This conduct allegedly violated Plaintiff's right to due process of law and gave rise to a malicious prosecution claim against the defendants.

Malicious prosecution claims of this nature are barred by *Heck*. *See Jackson*, 438 F. App'x 496, *2 (citing *Heck*, 512 U.S. at 485-86; *Wiley v. City of Chicago*, 361 F.3d 994, 997 (7th Cir. 2004); *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 899-900 (7th Cir. 2001)). For this reason, the malicious prosecution claim in Count 5 shall be dismissed

---

[2] Plaintiff's claims for malicious prosecution in Count 5 and intentional infliction of emotional distress in Count 6 arise under Illinois state law. Where a district court has original jurisdiction over a civil action such as a Section 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), as long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.,* 72 F.3d 1294, 1299 (7th Cir. 1995)). With this in mind, the Court will screen both of these claims in this Order.

without prejudice. The otherwise undeveloped due process claim shall also be dismissed without prejudice for failing to state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Twombly*, 550 U.S. at 570 (complaint must plead "enough facts to state a claim to relief that is plausible on its face").

### Count 6

To state a claim for intentional infliction of emotional distress under Illinois law, a plaintiff must demonstrate that the defendants intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe emotional distress. *Somberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006); *see Lopez v. City of Chi.*, 464 F.3d 711, 720 (7th Cir. 2006). The cause of action has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). To be actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 610 N.E.2d 745, 749 (Ill. App. 1993)). Whether conduct is extreme and outrageous is judged on an objective standard, based on the facts of the particular case. *Honaker*, 256 F.3d at 490.

Here, the allegations do not support a claim for intentional infliction of emotional distress against the defendants. Plaintiff includes no allegations which suggest that the defendants' conduct was truly extreme or outrageous or that it was intended to cause Plaintiff distress. Further, Plaintiff fails to allege that he actually suffered severe emotional distress in anything but

conclusory terms.  Therefore, Count 6 shall be dismissed without prejudice.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** is **DISMISSED** without prejudice against Defendants **STRATMAN** and **BLAIR** because it is *Heck*-barred.  This claim is **DISMISSED** with prejudice against all other defendants for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that **COUNT 2** is **DISMISSSED** with prejudice against Defendants **KELLY, GAILIUS, MUELLER, WEISENBORN, JENNINGS, PIPER, UNKNOWN PARTY** and **CITY OF FAIRVIEW HEIGHTS** for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that **COUNT 3** is **DISMISSED** with prejudice against **KELLY, STRATMAN, BLAIR, MUELLER, WEISENBORN, JENNINGS, PIPER** and **UNKNOWN PARTY** for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that **COUNT 4** is **DISMISSED** without prejudice against Defendants **KELLY, MUELLER, WEISENBORN, JENNINGS, PIPER** and **UNKNOWN PARTY** for failure to state a claim upon which relief may be granted.

**IT IS ALSO ORDERED** that **COUNTS 5** and **6** are **DISMISSED** without prejudice against all of the defendants for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNT 2** is subject to further review against Defendants **STRATMAN** and **BLAIR**; **COUNT 3** is subject to further review against Defendants **GAILIUS** and **CITY OF FAIRVIEW HEIGHTS**; and **COUNT 4** is subject to further review against Defendants **STRATMAN**, **BLAIR, GAILIUS** and **CITY OF FAIRVIEW HEIGHTS**.  With regard to **COUNTS 2, 3,** and **4,** the Clerk of Court shall prepare

for Defendants **STRATMAN**, **BLAIR, GAILIUS** and **CITY OF FAIRVIEW HEIGHTS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint (Docs. 7 and 7-1) and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Each Defendant is **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Reona J. Daly** for further pre-trial proceedings, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.* Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Daly** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: February 16, 2017**

<u>s/ STACI M. YANDLE</u>
**Honorable Staci M. Yandle**
**United States District Judge**