IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| DALLAS MCINTOSH, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 16-cv-1018-SMY |
| BRENDAN F. KELLY, et al., | ) ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is before the Court on the Report and Recommendation ("Report") of United States Magistrate Judge Reona J. Daly (Doc. 151), recommending that Defendants Brendan F. Kelly and James G. Piper's Motion to Dismiss (Doc. 97) be granted and Plaintiff Dallas McIntosh's Motion to Convert the motion to dismiss into a motion for summary judgment (Doc. 128) be denied. Plaintiff filed a timely objection to the Report (Doc. 163).

## Background

McIntosh makes the following allegations in the Third Amended Complaint (Doc. 39): McIntosh was driving his car on September 25, 2012 in Fairview Heights, Illinois when he was pulled over by Stratman, a Fairview Heights police officer, for allegedly failing to signal while changing lanes. While Stratman was reviewing McIntosh's paperwork, Blair arrived with a canine unit and conducted a drug-sniff of McIntosh's car. McIntosh does not remember what happened immediately afterwards but does recall waking up in the hospital and learning that he had been shot multiple times and had been in a coma. On October 19, 2012, McIntosh was indicted on 10 felony counts and was prosecuted by St. Clair County States Attorney Brendan F. Kelly and Assistant States Attorney James G. Piper. He ultimately pled guilty and was sentenced on January

29, 2015.

McIntosh claims that Kelly and Piper conspired with Stratman, Blair, Gailius, and Mueller, who are employed by the Fairview Heights Police Department, to conceal the unlawful nature of the September 25, 2012 traffic stop. Specifically, for his claim against Kelly and Piper, he alleges that:

1. Piper reviewed and signed an affidavit written by Mueller attesting that Stratman seized McIntosh upon observing him commit a violation of the Illinois vehicle code that was used to support a search warrant of his car.[1] (Doc. 39, ¶¶ 35, 118).

2. In the hours immediately following the traffic stop, Kelly and Piper conspired with Gailius, Mueller, Stratman, and Blair to conceal the misconduct of Stratman and Blair and to change the probable cause for the seizure in order to mislead McIntosh and prevent discovery of the illegal search and seizure. (*Id.*, ¶¶ 83, 110)

3. In furtherance of the conspiracy, Kelly directed that false, misleading, and deceptive police reports be written (vaguely referring to the alleged failure to signal as an Illinois vehicle code violation). (*Id.*, ¶¶ 111, 115, 116).

4. Kelly and Piper made false representations during the criminal proceedings to him, his attorneys, and the court that the traffic stop was supported by probable cause. (*Id.*, ¶ 30).

5. Piper solicited false testimony from Mueller that the traffic stop was supported by probable cause during the grand jury proceedings. (*Id.*, ¶¶ 84-85, 87-88, 119).

6. Kelly made false representations about the traffic stop when he entered his guilty plea. (*Id.*, ¶¶ 92, 94).

7. Kelly and Piper appeared at his sentencing hearing and presented a video recording of the traffic stop. (*Id.*, ¶ 37).

McIntosh alleges that he did not suspect that the traffic stop was not supported by probable cause

---

[1] Attached to the Third Amended Complaint is a "Complaint for Search Warrant" signed by Mueller on the same day as the traffic stop. While much of the document is redacted, it indicates that Mueller requested a warrant to search the car driven by McIntosh, a 2010 Chevrolet Camaro, based in part on the traffic stop (Doc. 39, pp. 59 – 61).

until the sentencing hearing when he viewed the dashboard camera video recording from Stratman's patrol car.

McIntosh is proceeding on the following claim against Kelly and Piper:

Count 4: Conspiracy claims against Defendants Stratman, Blair, Gailius, Mueller, Kelly, Piper, and the City of Fairview Heights for working together to deprive Plaintiff of his constitutional rights and covering up their misconduct in connection with the traffic stop, search and seizure that occurred on September 25, 2012.

Defendants Kelly and Piper moved for dismissal of the claim on the basis that as prosecutors, they are entitled to absolute immunity (Doc. 97). McIntosh opposed the Motion (Doc. 127) and filed a "Motion to Convert the Motion to Dismiss Into a Motion for Summary Judgment" (Doc. 128) which the Defendants opposed (Doc. 129). Judge Daly issued a Report setting forth the applicable law and her conclusion that Defendants Kelly and Piper are entitled to absolute immunity. (Doc. 151).

## Discussion

Because a timely objection was filed, the undersigned must undertake a *de novo* review of the Report. 28 U.S.C. § 636(b)(1)(C); FED.R.CIV.P. 72(b)(2) and (3); SDIL-LR 73.1(b); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). This requires the Court to consider those issues to which specific objections have been made and to make a decision "based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). The Court "may accept, reject or modify the magistrate judge's recommended decision." 28 U.S.C. § 636(b)(1)(C).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Lodholtz v. York Risk Servs. Group, Inc.*,

778 F.3d 635, 639 (7th Cir. 2015) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss, the Court accepts all factual allegations in the complaint to be true and draws all reasonable inferences in the light most favorable to the plaintiff. *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010). *Pro se* complaints are to be liberally construed. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013).

In her report, Judge Daly concluded that Kelly and Piper were engaged in reviewing evidence, initiating charges, and prosecuting Plaintiff at all times relevant and, as such, are entitled to absolute immunity. "Prosecutors are absolutely immune from liability for damages under § 1983 for conduct that is functionally prosecutorial; this immunity is understood to broadly cover all conduct associated with the judicial phase of the criminal process." *Bianchi v. McQueen*, 818 F.3d 309, 316 (7th Cir. 2016) (internal citations omitted). Thus, whether an individual "is protected by absolute prosecutorial immunity depends on the type of work he performed and the factual premises of the plaintiffs' claims" because a "prosecutor only enjoys absolute immunity insofar as he is 'act[ing] within the scope of his prosecutorial duties.'" *Id.* at 318 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976)).

"[T]he duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Imbler,* 424 U.S. at 431 n. 33. "More particularly, the immunity encompasses quintessentially prosecutorial functions like an out-of-court effort to control the presentation of a witness' testimony, and acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial."

*Bianchi*, 818 F.3d at 318 (internal quotation marks and citations omitted). "These include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek indictment has been made." *Id.* A prosecutor is absolutely immune from claims related to his participation in a probable cause hearing. *Burns v. Reed*, 500 U.S. 478, 492 (1991).

Kelly and Piper's actions in reviewing reports and affidavits, signing a search warrant, submitting a case to the grand jury, prosecuting criminal proceedings, laying a factual basis at a guilty plea hearing, and making a presentation at a sentencing hearing were all done in their role as advocates for the State and are associated with the judicial phase of a criminal prosecution. For his objection, McIntosh contends Judge Daly applied the wrong standard in evaluating the claim of absolute immunity and failed to consider whether Kelly and Piper's actions went beyond the the scope of their prosecutorial duties. He argues that absolute immunity does not cover the act of directing police officers to write false police reports.

McIntosh's reliance on *Kelly v. Chambers*, 2008 WL 4279976 (N.D. Ill. 2008) for the proposition that there is no prosecutorial immunity in the creation of false police reports is misplaced. In that case, the court concluded that the defendants' actions in generating a false police report was not *legislative activity* entitled to absolute immunity. *Id.* at *4. Significantly however, the court rejected the defendants' attempt to analogize their case to a prosecutor's absolute immunity for presenting, or conspiring to present, false evidence. *Id*. at *4 n.7. Citing *Imbler*, the court noted that "a prosecutor is immune for his actions when acting as an advocate of the State, even if he allegedly offers false testimony or suppresses exculpatory evidence" but "the scope of prosecutor immunity and legislative immunity must differ due to the different functions and responsibilities of each." *Id.* See also, *Heidelberg v. Hammer*, 577 F.2d 429, 432 (7th Cir.

1978 (finding the prosecutor was entitled to absolute immunity on a claim that he, along with the Sheriff's Department, falsified a line-up report).

McIntosh also argues that directing the creation of false reports is within the scope of investigation, and the Court acknowledges that "[a] prosecutor acting in an investigative capacity may claim only the same qualified immunity that protects police officers and other law-enforcement investigators." *Bianchi*, 818 F.3d at 318. The traffic stop was completed before the acts attributed to Kelly and Piper. There is no allegation suggesting they were working with, investigating, or advising the officers prior to or during the traffic stop. As such, there is no indication that they acted in an investigative capacity.

As advocates for the State, Kelly and Piper engaged in reviewing evidence, preparing paperwork for a search warrant, and preparation for, and initiation of, judicial proceedings. Prosecutorial absolute immunity is not limited to the bringing of charges and presentment of the State's case at trial; it extends to "[p]reparation, both for the initiation of the criminal process and for a trial, [and] may require the obtaining, reviewing, and evaluating of evidence." *Imbler,* 424 U.S. at 431 n. 33. Thus, they are absolutely immune from McIntosh's claim that they presented and conspired to elicit false statements and evidence during McIntosh's criminal prosecution. *Bianchi*, 818 F.3d at 318 (finding prosecutor had absolute immunity from § 1983 liability for claims premised on allegations that he presented false statements to a grand jury and at trial); *Burns*, 500 U.S. at 481-83 (finding that absolute immunity applied where the prosecutor participated in a probable cause hearing aimed at obtaining a search warrant, despite the allegation that the prosecutor suborned perjury at the hearing).

Next, McIntosh argues that submitting false testimony during grand jury proceedings is not covered by absolute immunity. But the Supreme Court in *Burns* and the Seventh Circuit in *Bianchi*

held otherwise. *Bianchi*, 818 F.3d at 318 (finding prosecutor had absolute immunity from § 1983 liability for claims premised on allegations that he presented false statements to a grand jury and at trial); *Burns*, 500 U.S. at 481-83 (finding that absolute immunity applied where the prosecutor participated in a probable cause hearing aimed at obtaining a search warrant, despite the allegation that the prosecutor suborned perjury at the hearing).

Finally, McIntosh contends the prosecutors' interactions with his attorneys to get him to plead guilty based on false representations fall outside the scope of immunity. However, when prosecutors engage with defense attorneys about resolving cases, they engage in their advocate function. Absolute immunity covers a prosecutor's acts committed in the course of negotiating a settlement of a case and extends to claims of prosecutorial misconduct arising from plea-bargaining. *Mendenhall v. Goldsmith*, 59 F.3d 685, 691 (7th Cir. 1995); *see also Soulier v. Haukaas*, 477 F.App'x 388 (7th Cir. 2012) (unpublished opinion) (finding prosecutor entitled to absolute immunity in section 1983 action for allegedly reprehensible plea bargain).

The alleged conspiratorial actions attributed to Kelly and Piper occurred during the judicial phase of the criminal process and while they were functioning as prosecutors. Thus, Kelly and Piper are entitled to absolute immunity on the claim against them in Count 4.[2]

**Motion to Convert**

Federal Rule of Civil Procedure 12(d) provides that if matters outside the pleading are considered, a motion to dismiss filed pursuant to Rule 12(b)(6) must be converted into a motion for summary judgment. Here, the Court's ruling on the Motion to Dismiss is based on the

---

[2] In their Motion to Dismiss, Kelly and Piper also argued that McIntosh's claim is barred by the statute of limitations and *Heck v. Humphrey*. Those issues are not addressed in Judge Daly's Report and it is not necessary to address them herein in light of the Court's finding of absolute immunity. However, these issues are addressed in the Court's Order on the Motion to Dismiss filed by Defendants Nicholas Gailius, Jeff Stratman, Timothy Mueller, and Jeff Blair. (Doc. 155). For the reasons stated in that Order, even if Kelly and Piper were not entitled to absolute immunity, the claim in Count 4 is *Heck*-barred.

allegations in the Third Amended Complaint.  Contrary to McIntosh's assertion, the Court is not *required* to look at material outside of the pleadings presented by a party in or in response to a Rule 12(b)(6) motion.  *Jevenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (holding that the Court has discretion in converting a motion to dismiss into a motion for summary judgment).  The motion to convert is denied.

## Conclusion

For the foregoing reasons, Judge Daly's Report and Recommendation (Doc. 151) is **ADOPTED in its entirety** and Defendants Brendan F. Kelly and James G. Piper's Motion to Dismiss (Doc. 97) is **GRANTED**.  Accordingly, Defendants Kelly and Piper are **DISMISSED with prejudice** and the Clerk of Court is **DIRECTED** to **TERMINATE** them as parties.  Plaintiff Dallas McIntosh's Motion to Convert (Doc. 128) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  March 16, 2020**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**